Michelle S. Nesbett
Birch Horton Bittner & Cherot
510 L Street, Suite 700
Anchorage, Alaska 99501
Telephone: 907.276.1550
Facsimile: 907.276.3680
Email: mnesbett@bhb.com

Attorneys for Defendant

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>DENALI BREHMER,<br><br>    Defendant. | Case No.: 3:19-cr-00058-SLG-MMS |

**DEFENDANT'S SENTENCING MEMORANDUM**

COMES NOW, Defendant, Denali Brehmer, by and through undersigned counsel, and hereby submits her sentencing memorandum in anticipation of her sentencing hearing currently set for March 4, 2024 at 1:00pm. For the reasons discussed below, the defendant is requesting the Court impose a sentence of 30 years, concurrent to her 99-year sentence imposed in 3AN-19-05725CR, with a reduction for time spent in-custody since her arrest on June 7, 2019, with a term

of supervised release of 5 years. The recommended total sentence, therefore, with the reduction for time previously served, is 303 months.

## I. OBJECTIONS

<u>Paragraph 72(a)</u>

This paragraph was added in response to an objection filed by the defendant, requesting that the information in this paragraph be added to the PSR. However, the wording of this paragraph is inaccurate. The information does not come from defense counsel, as currently stated in the first sentence of the paragraph. The information comes directly from a forensic psychological evaluation provided to U.S. Probation Officer Paula Rydberg on September 22, 2023, prior to the draft PSR. This report is also referenced in paragraphs 68-72. The first sentence of paragraph 72(a) discredits the information and should be changed to being with "According to the evaluation . . . "

## II. ADVISORY GUIDELINE CALCULATION

The defendant agrees with the PSR that the Total Offense Level is 35 and that the Defendant is a Criminal History Category I, and that the applicable guideline range is 180 to 210 months.

## III. A SUFFICIENT SENTENCE

The Court is required to consider seven factors contained in 18 U.S.C. § 3553(a) in order to fashion a sentence that is sufficient, but not greater than

necessary, to comply with the sentencing goals set by Congress. One of these factors is the defendant's sentencing range as determined by the USSG.[1]

The U.S. Supreme Court struck down strict adherence to the sentencing guidelines in *United States v. Booker*, 543 U.S. 220 (2005). The guidelines are just one of many factors the court must consider to fashion a sentence that is "sufficient but not greater than necessary" to achieve the sentencing goals enumerated in 18 U.S.C. § 3553(a). Sentences outside the guideline range do not require "extraordinary circumstances." *Gall v. United States*, 552 U.S. 38, 47 (2007). The United States Supreme Court has also rejected "the use of a rigid mathematical formula that uses the percentage of a departure as the standard for determining the strength of the justifications required for a specific sentence." *Id.*

The District Court may not presume the guideline range is reasonable. *Rita v. United States*, 551 U.S. 338, 352 (2007)(citing *Booker*, 543 U.S. at 259-60). Nor should the guidelines range be given more or less weight than any of the sentencing factors among those set out in 18 U.S.C. § 3553(a). *Kimbrough v. United States*, 552 U.S. 85, 101 (2007); *Gall v. United States*, 552 U.S. 38, 46 (2007).

---

[1] 18 U.S.C. § 3553(a)

## IV. § 3553 FACTORS

### A. Nature and Circumstances of the Offense

The defendant pled guilty to one count of Conspiracy to Produce Child Pornography. The conduct underlying the offense is detailed in the PSR. At the time of the offense, Ms. Brehmer was 18 years old, and the minor victim was 15 years old. Ms. Brehmer and the minor victim were peers in the same friend group. Those facts, standing alone, would tend to mitigate the offense. However, the circumstances surrounding the offense are far more complex and tragic. Ms. Brehmer was an at-risk teenager herself, hanging out with a group of troubled teenagers with various developmental disorders, substance abuse disorders, and mental health issues. Ms. Brehmer was immature for her age, a victim of multiple sexual assaults herself, and more vulnerable to grooming, coercion, and manipulation than a same-aged peer. Approximately two months prior to the offense, Ms. Brehmer had given birth to a baby, and was likely suffering from post-partum depression. Her pregnancy was the product of a rape, and she gave the baby up for adoption.

In this context, she began an on-line relationship with a man she believed to be named Tyler, but who was really her co-defendant in this case, Darin Schilmiller. Schilmiller convinced Ms. Brehmer that he was in love with her, and she quickly became obsessed with him. Schilmiller convinced Ms. Brehmer that

he was wealthy. He started asking her to send graphic pictures of herself, which she did. He kept escalating his requests, increasing the graphic sexual nature of his requests and demanding that Ms. Brehmer perform certain acts. Ms. Brehmer complied. The text messages between Schilmiller and Ms. Brehmer are disturbing and reveal the escalating nature of their deviant relationship.

At Schilmiller's request, Ms. Brehmer committed the offense conduct with MV2, Ms. Brehmer's 15-year-old friend. With an age difference of only three years, the production of child pornography conduct is not on the most serious end of the spectrum of child pornography offenses.

### B. Ms. Brehmer's History and Characteristics

Ms. Brehmer is currently 23 years old, but was 18 at the time of the offense. She was born in Alaska to a mother who was addicted to drugs and alcohol and who neglected Ms. Brehmer. Ms. Brehmer was eventually put into foster care, and adopted at the age of six. Ms. Brehmer began drinking alcohol at the age of 11, and her substance abuse issues escalated throughout her teenage years. At the age of 13, she was sexually assaulted. She began self-harm practices, including several suicide attempts. Her home life from the ages of 13 to 17 was chaotic and abusive. She suffers from post-traumatic stress disorder from the trauma she experienced in her childhood and teenage years.

At the age of 17, she was raped and became pregnant. During her pregnancy, she lost her best friend of nine years to suicide. She was 18 when she gave birth to a girl, on April 11, 2019. She gave the baby up for adoption, and fell into a depression. She began seeking out relationships online, which is where she eventually met her co-defendant, Darin Schilmiller, who presented himself as an attractive man named "Tyler." At first she was skeptical that he was really interested in her, as she perceived him to be too attractive to be interested in her. Ignoring red flags that came up in their online relationship, she became enamored with him, willing to do anything to please him.

A psychological evaluation conducted in October of 2019 and is cited in the PSR. The report described that adolescent's brains are not fully developed, and in particular, the areas of the brain that control higher-order executive functioning. Adolescents and young adults are markedly more impulsive, less responsible, more subject to peer pressure, and less able to appreciate consequences and outcomes. Ms. Brehmer in particular, is a fairly immature young woman. She is impulsive, and prone to behaviors likely to be self-harmful or self-destructive. She may have limited social skills, with particular difficulty in interpreting the normal nuances of interpersonal behavior. She quickly becomes engrossed in relationships without much foundation, overvalues these relationships, and then is deeply disappointed when she discovers that the relationships do not meet her

expectations. She has an overwhelmingly strong desire to be needed, wanted and loved. In her social relationships, she is likely to idealize potential romantic partners and friends and to nearly obsessively work to maintain those relationships and please the individual who is the object of her affection.

Courts are beginning to recognize that "emerging adults," those adults who were 18 to 20 years old at the time of the offense, require different treatment from older adult offenders.[2] After the testimony of four expert witnesses, the Supreme Court of Massachusetts, recently affirmed four core factual findings regarding the science of emerging adult brains. Those four findings were that emerging adults:

> (1) have a lack of impulse control similar to sixteen and seventeen year olds in emotionally arousing situations, (2) are more prone to risk taking in pursuit of rewards than those under eighteen years and those over twenty-one years, (3) are more susceptible to peer influence than individuals over twenty-one years, and (4) have a greater capacity for change than older individuals due to the plasticity of their brains.[3]

Society has long recognized that an individual does not fully mature until age 21. It is unlawful for a licensed gun dealer to sell any firearm, other than a shotgun or rifle, to an individual less than 21 years of age.[4] Federal law prohibits the sale of

---

[2] *Commonwealth v. Mattis*, 224 N.E. 3d 410 (Mass. 2024); see also *People v. Parks*, 987 N.W.2d 161 (Mich. 2022); *Matter of the Personal Restraint of Monschke*, 482 P.3d 276 (Wash. 2021).
[3] *Commonwealth v. Mattis*, 224 N.E. 3d 410, 421 (Mass. 2024).
[4] 18 U.S.C. § 922(b)(1).

tobacco or nicotine to anyone under the age of 21.[5] Federal funding is dependent upon states prohibiting the sale of alcohol to anyone under the age of 21.[6] In the vast majority of states that do allow gambling, the minimum age is 21.[7]

Ms. Brehmer was an emerging adult at the time of the offense. The characteristics of an emerging adult are apparent in Ms. Brehmer's actions, and her psychological evaluation. In addition, because of her young age at the time of the offense, she has a greater capacity for change, and therefore a greater capacity for rehabilitation than an older offender.

Attached as Exhibit A is Ms. Brehmer's allocution that she read to the courtroom at her state sentencing. Her words express acceptance of responsibility, remorse, and a strong desire to change. She is a far more mature person now, at the age of 23, than she was at the time of the offense, when she was only 18 years old.

---

[5] 21 U.S.C. § 387f(d)(5).
[6] 23 U.S.C. § 158.
[7] National Research Council (US) Committee on the Social and Economic Impact of Pathological Gambling. Pathological Gambling: A Critical Review. Washington (DC): National Academies Press (US); 1999. C, Legal-Age Gambling Opportunities and Restrictions. Available at: https://www.ncbi.nlm.nih.gov/books/NBK230619/

### C. USSG Policy Statements

In fashioning a sentence that is sufficient, but not greater than necessary, 18 U.S.C. § 3553(a)(5) directs that the Court consider any pertinent policy statement issued by the Sentencing Commission in effect on the date the defendant is sentenced.[8] Pursuant to the plea agreement in this case, the parties agree that the homicide to which Ms. Brehmer pled guilty in her State of Alaska case is relevant conduct pursuant to U.S.S.G. §1B1.3(a) and 5G1.3(b).[9] USSG §5K2.1 contains the Sentencing Commission's policy statement on death. If a death resulted, the court may increase the sentence above the authorized guideline range.[10] "[A] substantial increase may be appropriate . . . if the underlying offense was one for which base offense levels do not reflect an allowance for the risk of personal injury, such as fraud."[11] This policy statement is applicable here. While the USSG contain a cross reference to murder in the Sexual Exploitation of a Minor guideline at USSG §2G2.1(c), that cross reference

---

[8] 18 U.S.C. § 3553(a)(5).
[9] Dkt. 150 at 7.
[10] USSG §5K2.1
[11] USSG §5K2.1

is inapplicable here because the person murdered was not the minor victim of the offense of conviction.

> **D. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense, to Promote Respect for the Law, and to Provide Just Punishment for the Offense; to Afford Adequate Deterrence to Criminal Conduct; to Protect the Public from Further Crimes of the Defendant; and to Provide the Defendant with Needed Educational or Vocational Training, Medical Care, or Other Correctional Treatment in the Most Effective Manner**

Ms. Brehmer is asking for a 30-year sentence, with reduction for time previously served, to be served concurrently to her sentence in State of Alaska case 3AN-19-05725CR. This is the statutorily allowed maximum penalty for her offense of conviction while following the provisions of the USSG regarding concurrent sentences and prior imprisonment. This sentence provides just punishment, affords adequate deterrence, and protects the public from further crimes of Ms. Brehmer.

It also provides her access to educational and vocational training, and ensures that she receives correctional treatment in the most effective manner. Ms. Brehmer pled guilty to First Degree Murder in her State of Alaska Case and was sentenced to 99 years imprisonment, with no time suspended, to be served concurrently to her sentence in this case. She will not be eligible for discretionary

parole on her state case until she has served 1/3 of her sentence, or 33 years.[12] She will never be eligible for mandatory parole on her state sentence.[13] In addition, even if Ms. Brehmer were to appeal her state sentence and receive a lower sentence, her crime of conviction carries a mandatory 30-year minimum term of imprisonment, which must be served prior to any parole eligibility.[14] In other words, there are no foreseeable circumstance under which Ms. Brehmer will serve less than 30 years before being eligible for discretionary parole in her state case.

The State of Alaska agreed to transfer primary custody of Ms. Brehmer to the United States so that she may serve her federal sentence first, meaning she will be transferred to BOP custody once sentenced on this case. Ms. Brehmer believes that serving a larger portion of her sentence outside of Alaska will further her rehabilitation and correctional treatment. She is well known in the prison system in Alaska and is harassed by other inmates. In addition, former bad influences in Ms. Brehmer's life continually revolve in and out of the prison system in Alaska and come into contact with Ms. Brehmer. This increases her risk of relapse in her recovery journey.

---

[12] AS § 33.16.090(b)(1).
[13] AS § 33.16.010(g).
[14] AS § 12.55.125(a); 33.16.090(b)(1).

Ms. Brehmer will also receive more effective correctional treatment, and more effective rehabilitation, outside of Alaska in the Bureau of Prisons. Ms. Brehmer has researched the rehabilitation opportunities in the Bureau of Prisons and would like to take advantage of the far broader educational and technical training opportunities offered by BOP. For this reason, she is requesting this Court sentence her to 30 years, reduced for time she has already spent in custody, so that she may maintain continuity in her rehabilitation and take full advantage of the correctional treatment offered by the Bureau of Prisons.

## V. THE TOTAL SENTENCE OF IMPRISONMENT

On February 12, 2024, Judge Andrew Peterson sentenced Ms. Brehmer to 99 years, with no time suspended, on one count of First-Degree Murder in State of Alaska case 3AN-19-05725CR. Her sentence was ordered to run concurrent to her sentence in this case.[15]

Ms. Brehmer was first arrested by the State of Alaska on June 7, 2019, putting her in the primary custody of the State of Alaska. 18 U.S.C. § 3585(a) provides that a "sentence to a term of imprisonment commences on the date the defendant is received in custody . . . to commence service of sentence." Pursuant

---

[15] The court has not yet issued a written final judgment in Ms. Brehmer's State of Alaska case, however the sentenced was announced on the record.

to 18 U.S.C. § 3585(b), the Bureau of Prisons will only give credit for prior custody when the defendant has spent time in official detention as a result of the offense for which the sentence was imposed. Meaning, if the Court were to sentence Ms. Brehmer to 30 years, she would not get credit for prior 4 years and 9 months she has already spent in custody. Therefore, her recommended sentence should be adjusted, pursuant to USSG §5G1.3(b), to reflect a reduction of 57 months for her time spent in custody on her State of Alaska case.

In addition, pursuant to the plea agreement in this case, the parties agree that the homicide to which Ms. Brehmer pled guilty in her State of Alaska case is relevant conduct pursuant to U.S.S.G. §1B1.3(a) and 5G1.3(b).[16] USSG 5G1.3(b) directs that a sentence imposed shall run concurrent to a term of imprisonment that resulted from another offense that is relevant conduct to the instant offense of conviction. A total sentence of 303 months, run concurrently to her sentence in State of Alaska case 3AN-19-05725CR, is the most appropriate sentence here. It takes into consideration all of the factors in 18 USC 3553(a), and meets the sentencing goals laid out in 18 USC 3553(a)(2).

The parties jointly request the following language be used in Ms. Brehmer's judgment:

---

[16] Dkt. 150 at 7.

Defendant is committed to the custody of the Bureau of Prisons for a term of 303 months to commence immediately. This term of incarceration reflects a 57 month adjustment to the sentence pursuant to USSG § 5G1.3(b). This sentence shall be served concurrently with the sentence imposed in 3AN-19-05725CR.

In addition, Ms. Brehmer recommends a period of supervised release of 5 years. This is statutory mandatory minimum term of supervised release, however, Ms. Brehmer will be on parole with the State of Alaska for the rest of her life, if she is ever released on parole. In addition, she will be required to register as a sex offender. A third set of complex requirements to follow, should she ever be released by the State of Alaska onto discretionary parole, is unnecessary and overly burdensome.

## VI. CONCLUSION

For all of the above reasons, Ms. Brehmer respectfully requests the Court sentence her to 303 months, concurrent to her 99-year sentence imposed in 3AN-19-05725CR.

DATED this 26th day of February, 2024.

Birch Horton Bittner & Cherot
Attorneys for Defendant

By: s/ Michelle S. Nesbett
Michelle S. Nesbett, ABA #0705028

CERTIFICATE OF SERVICE

The undersigned hereby certifies that on February 26th, 2024, a copy of the foregoing document was served via the courts electronic CM/ECF delivery system:

All individuals registered to receive electronic service in this matter.

BIRCH HORTON BITTNER & CHEROT

By:  s/ Michelle S. Nesbett